**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sara Teresa Parker, | No. CV-19-02581-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Commissioner of Social Security Administration's ("Commissioner") decision to deny Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 18, "Pl. Br."), the Commissioner's Response (Doc. 19, "Def. Br."), Plaintiff's Reply (Doc. 20, "Reply"), and the Administrative Record (Doc. 13, "R."). For the following reasons, the decision is affirmed.

I.     Background[1]

Plaintiff filed an application for disability benefits on May 1, 2015, alleging disability as of August 1, 2014. (R. at 19.) Following denial of the application at the initial and reconsideration levels, a hearing before an administrative law judge ("ALJ") was held

---

[1]     The Court has reviewed the entirety of the medical evidence. In lieu of providing a detailed summary of it here, the Court will reference and incorporate particular evidence as appropriate in its analysis.

at Plaintiff's request on January 10, 2018. (*Id.* at 19, 36–64.) On March 22, 2018, the ALJ

issued a written decision finding Plaintiff not disabled. (*Id.* at 19–28.)

In that decision, the ALJ found Plaintiff had "severe"[2] impairments of "status post

carpal tunnel and right thumb trigger release; fibromyalgia; status post cervical fusion;

status post lumbar fusion; and osteoarthritis." (*Id.* at 22.) Despite those impairments, the

ALJ found Plaintiff retained the residual functional capacity ("RFC")[3] to perform "light"[4]

work with the following limitations and exceptions:

- 4 hours of standing and/or walking;
- frequent operation of bilateral foot controls;
- no crawling or climbing of ladders, ropes, or scaffolds;
- occasional balancing, stooping, kneeling, crouching and climbing of ramps and stairs;
- occasional bilateral overhead reaching;
- frequent bilateral handling and fingering; and
- occasional exposure to excessive vibration, pulmonary irritants, dangerous machinery with moving mechanical parts, and unprotected heights.

(*Id.* at 23.) Based on this assessment and the testimony of a vocational expert ("VE"), the

ALJ found that Plaintiff could perform her past relevant work as an administrative assistant

---

[2]     An "impairment or combination of impairments" is "severe" if it "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

[3]     "[R]esidual functional capacity is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).

[4]     *See* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

- 2 -

1   and was therefore not disabled.  (*Id.* at 27–28.)  Afterward, the Appeals Council denied

2   review and the decision became final.  (*Id.* at 1-3.)

3   II.   Legal Standard

4          In reviewing a decision of the Commissioner, the Court only reviews issues raised

5   by the party challenging the decision.  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

6   1155, 1161 n.2 (9th Cir. 2008); *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998)

7   ("[The Court] will not ordinarily consider matters on appeal that are not specifically and

8   distinctly argued in appellant's opening brief.").  The Court may set aside the decision only

9   when it is not supported by "substantial evidence" or is based on legal error.  *Trevizo v.

10  Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).  "Substantial evidence means more than a

11  mere scintilla, but less than a preponderance. It means such relevant evidence as a

12  reasonable mind might accept as adequate to support a conclusion." *Id.*  "Where evidence

13  is susceptible to more than one rational interpretation, the ALJ's decision should be

14  upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997)

15  ("[T]he key question is not whether there is substantial evidence that could support a

16  finding of disability, but whether there is substantial evidence to support the

17  Commissioner's actual finding that claimant is not disabled.").  "Yet [the Court] must

18  consider the entire record as a whole, weighing both the evidence that supports and the

19  evidence that detracts from the Commissioner's conclusion, and may not affirm simply by

20  isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675.  "[The

21  Court] review[s] only the reasons provided by the ALJ in the disability determination and

22  may not affirm the ALJ on a ground upon which he [or she] did not rely." *Id.*  "Finally,

23  [the Court] may not reverse an ALJ's decision on account of an error that is harmless."

24  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  There is no harm where an error is

25  "inconsequential to the ultimate nondisability determination" or where the ALJ's "path

26  may reasonably be discerned, even if the [ALJ] explains [his or her] decision with less than

27  ideal clarity." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing

28  *Alaska Dept. of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)).

To determine whether a claimant is disabled under the Act, the ALJ engages in a five-step sequential analysis. 20 C.F.R. § 404.1520(a). The burden of proof is on the claimant for the first four steps but shifts to the Commissioner at the fifth. *Molina*, 674 F.3d at 1110. At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step and determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

III.   <u>Analysis</u>

A.   **The ALJ Did Not Err When Evaluating Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ improperly rejected her testimony regarding the severity of her pain and symptoms. (Pl. Br. at 17–23.)

In the written decision, the ALJ summarized Plaintiff's testimony on these topics as follows:

> During the hearing, [Plaintiff] complained of wide-spread body pain, such that she struggles with walking and standing for prolonged periods. She reported that she can perform small chores around her home for 25-30 minutes at a time, after which she must take a painkiller and rest; because of her pain, she alleged that she spends approximately 65-70% of her day either in a rocking chair or lying down. [She] also alleged that she experiences

significant mental limitations, including a significant reduction in her ability to interact with others.[5]

(R. at 24, 41–57.) The ALJ rejected this testimony for at least four reasons, finding that (1) it was "inconsistent [with] her medical records [which] show her functioning at a high level following her cervical and lumbar surgeries"; (2) "[f]urther complicating [Plaintiff's] allegations of significant functional limitations is her history of noncompliance with treatment"; (3) although Plaintiff "testified that her medication leaves her feeling 'sleepy' and makes any concentrating difficult," "[t]his is inconsistent with her medical record, wherein she never complains of medication side effects"; and (4) Plaintiff's "lack of mental health treatment, as well as a lack of ongoing complaints and repeated demonstrations of a normal mood and affect, suggest that her mental health is not as limited as she has alleged." (R. at 24-26.)

### 1.   Standard Of Review

Absent evidence of malingering, an ALJ may only discount a claimant's testimony for "specific, clear and convincing" reasons supported by substantial evidence. *Molina*, 674 F.3d at 1112. General findings are not sufficient. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the

---

[5]      Plaintiff initially testified that her "whole body was hurting" but, upon request for clarification from the ALJ, narrowed it down to her arms and legs. (R. at 41.)  She testified to having tingling in her right arm due to carpal tunnel syndrome despite surgical intervention. (*Id.* at 42–43.)  She further testified that she can only stand for an hour due to "excruciating" pain in her legs. (*Id.* at 46–47, 49.)  Despite these physical impairments, Plaintiff testified that some of the reasons she "stopped working" were (1) anxiety and (2) "family issues"—specifically, a directive from the Department of Child Services that an adult female be at home to care for Plaintiff's foster children. (*Id.* at 53–54.)

testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112.  The ALJ also may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007); *see* 20 C.F.R. § 404.1529(c)(3); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling.").  Similarly, the ALJ may consider a claimant's "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see* 20 C.F.R. §§ 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."), 404.1530(b).  Last, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain [or symptom] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

### 2.   Contradictory Medical Records

As noted, the first reason the ALJ provided for discounting Plaintiff's symptom testimony was its inconsistency with the medical evidence.  The ALJ noted that in December 2014, before undergoing two spinal surgeries, Plaintiff was "function[ing] at a high level despite the condition of her spine" as evident by notations that she "maintained a full range of motion and demonstrated 5/5 strength in her upper and lower extremities." (*Id.* at 24.)[6]  The ALJ further noted that after her surgeries, Plaintiff still was "functioning at a high level."  (*Id.* at 25.)  As for Plaintiff's cervical surgery in July 2015, the ALJ noted that the procedure reportedly "went well" and that Plaintiff subsequently "reported improved functioning and a reduction in pain while informing her surgeon that she was very happy."  (*Id.* at 24–25, citing *id.* at 417, 413 ["She is very happy with what we have done for her and can clearly tell me she is better now than she was preoperatively."].)  Additionally, Plaintiff testified that this procedure helped with her neck pain, taking "a lot

---

[6]     The ALJ cited the document appearing at R. 328, but the referenced clinical findings actually appear at R. 330.

of the pain away." (*Id.* at 41–42.)  As for Plaintiff's lumbar surgery in February 2016, the ALJ noted that Plaintiff had a "slow recovery . . . but by July 2016, [she] was reporting that she was doing better after her surgery." (*Id.* at 25, citing *id.* at 466-71 [Exhibit 13F].) Additionally, the ALJ cited records from Plaintiff's August 2016 visit with a pain specialist, which the ALJ characterized as follows: "[Plaintiff] was reporting that her pain had improved due to a combination of surgery and pain medications, while also noting that her lower back pain was no longer radiating into her lower extremities." (R. at 25.).

The ALJ also cited records from various other office and hospital visits in which medical providers noted a normal range of motion in Plaintiff's back, full strength in her extremities, and a normal gait.  (*Id.* at 25, citing *id.* at 547, 589, 870, 653.)  Finally, the ALJ acknowledged that more recent X-rays from December 2017 showed "[d]orsal displacement of the metallic intervertebral disc spacer" with "likely impingement of the left L5 nerve root and possibly the left S1 nerve root." (*Id.* at 25, 1003.)  The ALJ found that "[t]his could be expected to limit [Plaintiff's] ability to walk, stand, and perform postural activities, but the allegations made at the hearing remain unsupported as clinical records showed her functioning at a high level, with a steady, upright gait, while demonstrating a full range of motion and normal strength." (*Id.* at 25.)[7]

Given this backdrop, the Court finds no harmful error with respect to the ALJ's first proffered reason for rejecting Plaintiff's testimony.  The ALJ could have reasonably concluded that the cited medical records contradicted that testimony—which, again, was that Plaintiff's pain was so debilitating she could only perform 25 minutes of light housework.  The cited records reflect that Plaintiff experienced a marked decrease in her pain level following her surgeries, which enabled her to function "at a high level" that was even "better" than before the surgeries.  This is substantial evidence supporting the ALJ's finding of contradiction.

Plaintiff's arguments to the contrary (Pl. Br. at 19-21) are unavailing.  First, Plaintiff

---

[7]   Plaintiff testified that she was supposed to follow up with her surgeon regarding the disc displacement.  (R. at 50.)  However, there is no record of any follow-up visit.

argues that "[t]he ALJ's belief that the severity of a claimant's reported symptoms may be properly rejected on the basis the 'symptoms are not entirely consistent with the medical evidence' . . . is a fundamental legal error." (Pl Br. at 19.)  But this mischaracterizes the ALJ's conclusion in this case, which is that the medical records affirmatively contradicted Plaintiff's testimony.  (R. at 24-25.)  Additionally, this was not the ALJ's sole reason for rejecting Plaintiff's testimony.

Second, Plaintiff contends that the ALJ erred by not providing "meaningful explanation" of her finding that Plaintiff was "functioning at a high level following her cervical and lumbar surgeries." (Pl Br. at 19.)  Although the Court agrees that the term "high level" is somewhat vague and that the ALJ could have explained this finding with more clarity, the Court is nonetheless able to reasonably discern the ALJ's intended meaning by reading the term in the context of the entire decision.  Specifically, the Court can reasonably discern, based on the decision as a whole and the ALJ's thorough discussion of the medical evidence and its incongruency with Plaintiff's allegations, that it means Plaintiff was more functional than she alleged.  *Treichler*, 775 F.3d at 1099 ("An error is harmless if . . . the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.") (citation and internal quotation marks omitted).

Third, Plaintiff identifies various reasons why, in her view, the medical records cited by the ALJ don't actually contradict her symptom testimony.  (Pl. Br. at 19-21.)  These arguments are unavailing.  For example, Plaintiff argues that the ALJ's reliance on the treatment records at Exhibit 13F, which the ALJ cited as proof that Plaintiff was "doing better" after her surgery, was misplaced because the treatment records comprise "six pages" and "[t]he ALJ did not specify which treatment record she believed was inconsistent with which portion of [her] symptom testimony." (Pl. Br. at 20.)  But the records at issue specifically note that Plaintiff told her surgeon that she was "appreciative of the improvement she has obtained" (R. 466) and that the surgeon viewed Plaintiff as "coming along" (*id.*).  It is reasonable for an ALJ to infer, from a patient's acknowledgement that she has made "improvement," that the patient is "doing better."  To argue otherwise is a

1  semantic sideshow.

2      Similarly, Plaintiff argues that the ALJ's statement regarding the absence of

3  radiating back pain in August 2016 was erroneous because "the cited page does not include

4  that [Plaintiff] reported she no longer had radiating pain." (Pl. Br. at 20.)  This argument

5  puts form over substance.  In support of the statement regarding the absence of radiating

6  back pain, the ALJ cited "Exhibit 16F, page 3." (R. at 25.)  As it turns out, pages 1-3 of

7  Exhibit 16F are the notes from Plaintiff's August 2016 visit to a pain management

8  specialist.  On page 1 of those notes, the doctor specifically stated: "Symptoms include

9  lower back pain.  *There is no radiation*.  The patient . . . states her back is better since the

10  surgery now." (R. at 488, emphasis added.)  Thus, although the ALJ should have cited

11  "Exhibit 16F, page 1" instead of "Exhibit 16F, page 3" when identifying the specific

12  portion of the record that contradicted Plaintiff's symptom testimony, the bottom line is

13  underlying records are consistent with the ALJ's characterization of them.

14      Fourth, Plaintiff argues that the ALJ's citation of the medical record at R. 547 was

15  "unhelpful" because it is a record of a "primary care 'preoperative cardiovascular

16  examination' before right hand carpal tunnel surgery." (Pl. Br. at 21.)  But regardless of

17  why Plaintiff was being examined, the provider found and noted a normal gait and station,

18  range of motion, and strength in the upper and lower extremities. (R. at 547.)  The Court

19  fails to comprehend how the purpose of the examination renders it "unhelpful" or

20  diminishes the relevance or legitimacy of findings made during the examination.  Plaintiff's

21  challenges to the ALJ's reliance on the medical records at R. 589 (gynecological

22  examination) and R. 870 (emergency room visit) fail for similar reasons.  Again, the reason

23  why Plaintiff visited a particular provider is irrelevant.  What is relevant are the resulting

24  findings concerning relevant parts of her anatomy.  The ALJ was therefore entitled to—

25  and, indeed, required to—consider these findings when assessing Plaintiff's RFC and the

26  alleged severity of her impairments.  *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your

27  residual functional capacity based on *all* of the relevant medical and other evidence.")

28  (emphasis added); *id.* § 404.1529(a) ("In evaluating the intensity and persistence of your

symptoms, including pain, we will consider *all of the available evidence . . . .*") (emphasis added).

### 3.   Inconsistent Statements Concerning Side Effects

The ALJ also rejected Plaintiff's symptom testimony in part due to Plaintiff's inconsistent statements regarding the side effects of her medication.  (R. at 26.)

Although Plaintiff correctly notes that she did occasionally report various side effects from her medications, including itching and fatigue (Pl. Br. at 22-23, citing R. at 685, 699, 711, 713), the record also contains instances as recently as November 2017 where she denied side effects, as noted by the ALJ.  (R. at 26, citing R. at 653 ["The patient denies side effects to the medications and is tolerating them well.  Requesting a refill of oxycodone and gabapentin 300mg and 800mg."]; *see also* R. at 488 ["By report there is good compliance with treatment, good tolerance of treatment and good symptom control."].)  Such inconsistency provided an additional valid reason for the ALJ to reject her testimony.  *See, e.g., Edmond v. Colvin*, 2014 WL 6896041, *9 (C.D. Cal. 2014) ("An ALJ may also rely on 'ordinary techniques of credibility evaluation,' in assessing the credibility of the allegedly disabling symptoms.  In this case, Plaintiff's statements . . . regarding possible medication side effects were inconsistent with the medical record and his testimony at the hearing.  Accordingly, these were valid reasons supported by substantial evidence of record for discounting Plaintiff's credibility.") (citation omitted); *Santos v. Astrue*, 2011 WL 5865569, *6 (C.D. Cal. 2011) (claimant's inconsistent statements regarding "medication side effects" constituted a "clear and convincing reason[] supported by substantial evidence . . . to affirm the ALJ's adverse credibility determination").

### 4.   Conclusion

Because two of the ALJ's proffered reasons for rejecting Plaintiff's symptom testimony are specific, clear and convincing, and supported by substantial evidence, it is unnecessary to resolve Plaintiff's challenges (Pl. Br. at 22-24) to the ALJ's additional proffered reasons for rejecting her symptom testimony.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding that ALJ's reliance on an invalid

1   reason for discounting claimant's testimony was "harmless error" where ALJ had also

2   relied on valid reasons).

3   B.   **The ALJ Did Not Err By Assigning "Little Weight" To Dr. Ehteshami's**

4   **Opinion**

5   Plaintiff's other assignment of error is that the ALJ improperly rejected the opinion

6   of her treating surgeon, John Ehteshami, M.D. (Pl. Br. at 11–17.)   In January 2016—that

7   is, *before* Plaintiff's lumbar surgery—Dr. Ehteshami opined that Plaintiff was limited to

8   occasional and frequent lifting of less than 10 pounds, two hours of standing and walking,

9   and two hours of sitting. (R. at 405.)

10   In assessing a claimant's RFC, the ALJ considers "all of the relevant medical and

11   other evidence," including medical opinion evidence. 20 C.F.R. § 404.1545(a)(3); *see* 20

12   C.F.R. §§ 404.1513(a)(2), 404.1527.   The ALJ is required to evaluate and weigh every

13   medical opinion in the record. 20 C.F.R. § 404.1527(c).   Generally, opinions of treating

14   sources are entitled to the greatest weight; opinions of examining, non-treating sources are

15   entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled

16   to the least weight. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "If a treating

17   or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may

18   only reject it by providing specific and legitimate reasons that are supported by substantial

19   evidence." *Id.*   An ALJ satisfies the substantial evidence requirement by "setting out a

20   detailed and thorough summary of the facts and conflicting evidence, stating his [or her]

21   interpretation thereof, and making findings." *Id.*   In evaluating any medical opinion, the

22   ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency,

23   nature, and extent of any treatment relationship; (3) the degree of support the opinion has,

24   particularly from objective medical evidence; (4) the consistency of the opinion with the

25   record as a whole; (5) the source's specialization; and (6) "other factors."   20 C.F.R.

26   § 404.1527(c); *Trevizo*, 871 F.3d at 675.   An ALJ may reject any opinion that is

27   "conclusory, brief, and unsupported by the record as a whole or by objective medical

28   findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014); *see* 20 C.F.R.

§ 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.  The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Here, the ALJ afforded "little weight" to Dr. Ehteshami's opinion because (1) it was "inconsistent with [Plaintiff's] medical record, which shows [her] complaints of pain and functional limitations improving following her surgeries"; (2) it "appeared to be based on [Plaintiff's] subjective complaints, rather than on his own observations of [Plaintiff]"; and (3) it "merely required [him] to check boxes and he does not provide support for [his] opinions."  (*Id.* at 26.)

The Court finds no error.  Although Plaintiff is correct that an ALJ may not reject a medical opinion solely because it is in a "check-the-box" format, *Trevizo*, 871 F.3d at 677 n.4, the ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).  Here, substantial evidence supports the ALJ's determination that Dr. Ehteshami's opinion was unsupported by the record as a whole.  Specifically, the ALJ found that Dr. Ehteshami's opinion, like Plaintiff's testimony, was inconsistent with Plaintiff's improvement following both surgeries.  This inconsistency was a specific and legitimate reason to afford lesser weight to the opinion.  *See* 20 C.F.R. § 404.1527(c) (4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *Batson*, 359 F.3d at 1195.  Given the validity of this reason, the Court need not decide whether substantial evidence supports the ALJ's finding that the opinion was based on Plaintiff's subjective complaints or whether this reason was legitimate.  *Cf. Bray*, 554 F.3d at 1227.[8]

---

[8]     The Court rejects Plaintiff's argument that the ALJ's evaluation of the medical evidence was a "medical opinion in the guise of evidence evaluation." (Pl. Br. at 13.)  The ALJ must "assess [a claimant's] residual functional capacity based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  Furthermore, the ALJ must

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and terminate this action.

Dated this 5th day of August, 2020.

_____
Dominic W. Lanza
United States District Judge

---

evaluate medical opinion evidence according to applicable regulatory standards. *See* 20 C.F.R. § 404.1527. The fulfillment of these regulatory duties is not tantamount to rendering a medical opinion.